[ECF No. 38]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

---

KWAMI WILLIAMS,

          Plaintiff,

   v.

INTERNATIONAL PAPER CO., et al.,

          Defendants.

Civil No. 21-19765(MJS)

---

### OPINION AND ORDER

This matter comes before the Court upon the motion for leave to file a second amended complaint ("Motion") filed by plaintiff Kwami Williams ("Plaintiff") [ECF No. 38]. The Court has received and reviewed Plaintiff's submission, the brief in opposition filed by defendant Air Conveying Corporation ("ACC") [ECF No. 40], and the brief in reply filed by Plaintiff [ECF No. 42]. Defendant International Paper Company ("IPC") has not filed a response to the Motion. The Court exercises its discretion to decide Plaintiff's Motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons that follow and for good cause shown, Plaintiff's motion for leave to file a second amended complaint is **GRANTED in part** and **DENIED in part**.

Background

Plaintiff initially filed this personal injury suit against his employer, IPC [ECF No. 1-1 at 2 ¶ 2], and unnamed fictitious corporations/entities and individuals in the Superior Court of New Jersey, Law Division, Camden County on June 8, 2021. ECF No. 1. Plaintiff alleged that at IPC's Bellmawr facility, where it maintained a corrugated box manufacturing facility, he operated a machine known as "the hogger,"[1] into which he fed unused materials/waste from the box-making process. Id. at 4 ¶¶ 6, 8. Some debris from "the hogger" would fall into a five-foot deep "pit" area. Id. at 4 ¶¶ 9-10. Plaintiff alleged that on June 9, 2019, he was instructed by his supervisor to clean the pit area, and while doing so, Plaintiff's glove got caught in the machine, severely injuring his left arm. Id. at 5 ¶¶ 17- 18.

Plaintiff's initial complaint included the following claims: (1) intentional tort against IPC, (2) negligence against the fictitious corporations/entities, (3) respondeat superior against both IPC and the fictitious corporations/entities, and (4) negligent/hiring retention against IPC and the fictious corporations/entities and individuals. See ECF No. 1-1.

IPC timely removed the suit to this Court and filed an answer. ECF No. 2. Subsequently, both parties consented to Magistrate Judge

---

[1] In Plaintiff's amended complaint [ECF No. 15] and proposed second amended complaint [ECF No. 38 at 11-28], Plaintiff refers to the "hogger" as the "trench conveyor trim removal system." The Court will use the latter term to refer to the machine at issue.

2

jurisdiction. ECF Nos. 12-13. Plaintiff filed his first amended complaint on March 27, 2022, in which he added Air Conveying Corporation ("ACC"), the alleged designer/manufacturer of the trench conveyor system [ECF No. 15 at 2 ¶¶ 3-5], as a defendant, and asserted the following claims: (1) negligence/product liability and (2) negligent hiring/retention/supervision.[2] ECF No. 15. ACC filed a motion to dismiss the amended complaint on May 9, 2022.[3] ECF No. 23.

On June 7, 2022, in response to ACC's motion to dismiss, Plaintiff sought leave to file a second amended complaint to address the deficiencies in Plaintiff's first amended complaint that ACC identified in its motion to dismiss. ACC argued, among other things, that the claims asserted against ACC were insufficiently pleaded and time-barred and that Plaintiff did not properly substitute ACC as one of the fictitious corporate defendants. See id.

Plaintiff's proposed second amended complaint added Weyerhaeuser Company ("Weyerhaeuser") as a defendant, revised certain factual allegations and claims asserted against the

---

[2] IPC did not challenge Plaintiff's first amended complaint, instead filing an answer on April 8, 2022 [ECF No. 16]. The Court construed this as IPC's consent to the amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). See ECF No. 37 at 2-3.

[3] ACC filed its consent to Magistrate Judge jurisdiction on June 1, 2022. ECF No. 27.

defendants, and clarified that Plaintiff was substituting ACC and Weyerhaeuser as two of the fictitious corporate defendants named in the initial complaint. ECF No. 28. ACC filed an opposition to Plaintiff's motion [ECF No. 29]. The Court administratively terminated ACC's motion to dismiss in light of Plaintiff's motion for leave to file a second amended complaint [ECF No. 36].

The Court then denied Plaintiff's motion for leave to file a second amended complaint on January 24, 2023, noting the following deficiencies: (1) Plaintiff improperly prepared the red-lined version of the proposed second amended complaint; (2) Plaintiff failed to fully explain the delay in identifying ACC and Weyerhaeuser as defendants; (3) Plaintiff did not clarify whether ACC and Weyerhaeuser were being substituted in as the fictitious corporate defendants; (4) Plaintiff failed to address whether his claims against the newly-added defendants are barred by the statute of limitations or whether the fictitious defendant rule equitably tolled the statute of limitations; (5) Plaintiff did not sufficiently plead a design defect against ACC or Weyerhaeuser as to the machine or the machine's electrical system; and (6) it was not clear whether Plaintiff was also asserting a manufacturing defect claim and failure to warn claim against the defendants. ECF No. 37. The Court granted Plaintiff leave to refile the motion for leave to file a second amended complaint within twenty-one days. Id.

4

On February 13, 2023, Plaintiff filed this Motion - the renewed motion for leave to file a second amended complaint, as ordered. ECF No. 38. On March 7, 2023, ACC filed its opposition to the Motion [ECF No. 40] and Plaintiff filed his brief in reply on March 13, 2023 [ECF No. 42]. The Motion is now ripe for the Court's review.

Discussion

Federal Rule of Civil Procedure 15(a)(2) advises that in circumstances where a party cannot amend its pleading as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (citing Wright, Miller and Kane, Federal Practice and Procedure, Vol. 6, § 1471 at 505 (2d ed. 1990)). A court may deny a party's leave to amend a pleading "where it is apparent from the record that '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" United States ex rel. Schumann v. Astrazeneca

Pharms. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (quoting Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)).

Plaintiff's Motion seeks to address the deficiencies identified in the Court's January 24, 2023 Order [ECF No. 37] denying Plaintiff's first motion for leave to file a second amended complaint. See ECF No. 38 at 2-3. ACC argues in opposition that Plaintiff's Motion should be denied because: (1) Plaintiff's claims are time-barred because the statute of limitations has passed and the equitable tolling of the fictitious defendant rule does not apply; (2) Plaintiff's claims are time-barred by N.J.S.A. § 2A:14-1.1(a), a statute of repose governing improvements to real property; (3) Plaintiff's claims are futile because they are not sufficiently pleaded; and (4) granting Plaintiff's Motion would prejudice ACC.[4] ECF No. 40.

---

[4] IPC did not file an opposition to Plaintiff's Motion. Weyerhaeuser, as a proposed defendant, does not have standing to oppose Plaintiff's Motion because it has not yet been added as a defendant. See Raab Family Partnership v. Borough of Magnolia, Civ. No. 08-5050, 2009 WL 10689669, at *4 (D.N.J. Oct. 30, 2009). ACC only has standing to challenge Weyerhaeuser's proposed addition on undue delay and prejudice grounds, not futility grounds. See id.; see also Chesler v. City of Jersey City, Civ. No. 15-1825, 2019 WL 6318301, at *3 (D.N.J. Nov. 26, 2019) (finding that defendants named in the first complaint do not have standing to oppose the plaintiff's motion for leave to amend the complaint to add new defendants and new claims against those defendants on futility grounds); but see Custom Pak Brokerage, LLC v. Dandrea Produce, Inc., Civ. No. 13-5592, 2014 WL 988829, at *2 (D.N.J. Feb. 27, 2014) (finding that current defendants only possess standing to challenge an amended complaint that proposes new parties based on undue delay and/or prejudice grounds).

The Court will deny Plaintiff's Motion insofar as it seeks to add product liability claims against Weyerhaeuser and ACC for the electrical system of the trench conveyor trim removal system, and grant Plaintiff's Motion insofar as it seeks to add product liability claims against ACC for the trench conveyor trim removal system (as a whole) and amend allegations asserted against IPC.[5]

1) Whether Plaintiff's claims against ACC and Weyerhaeuser are barred by the statute of limitations

Personal injury tort actions in New Jersey are governed by a two-year statute of limitations. See N.J.S.A. 2A:14-2(a) ("Except as otherwise provided by law, every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next

---

[5] Plaintiff amended certain allegations in the intentional tort claim against IPC, including, among others, that IPC "knowingly and intentionally exposed Plaintiff to significant certainty of injury by having him work on the machine with unsecure moving parts without LOTO [lock out tag out] training." ECF No. 38 at 17 ¶ 30. Plaintiff also asserted punitive damages against IPC. Id. at 17 ¶ 31. Because IPC has not opposed these amendments, and neither ACC nor Weyerhaeuser has standing to oppose these amendments, and because punitive damages are a remedy for intentional torts, see generally Kouveliotes v. USAA Cas. Ins. Co., Civ. No. 12-5273, 2012 WL 4955271 (D.N.J. Oct. 16, 2012) (citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224 (1984)), the Court **GRANTS** Plaintiff's Motion to this extent.

The Court also notes that Plaintiff's proposed amended complaint also included a respondeat superior claim against IPC, which had also been included in Plaintiff's initial complaint [ECF No. 1-1 ¶¶ 34-36] and Plaintiff's amended complaint [ECF No. 15 at 10 ¶¶ 34-36]. Because IPC has not opposed this Motion, and because IPC answered Plaintiff's proposed amended complaint including this same claim, the Court will not dismiss this claim at this time.

after the cause of any such action shall have accrued[.]"). Plaintiff first filed his complaint in state court on June 8, 2021. ECF No. 1-1 at 2. Plaintiff alleged in that complaint that the incident occurred on June 9, 2019. Id. at 5 ¶ 17. Therefore, he filed his initial complaint within the statute of limitations, albeit one day before the deadline. Plaintiff named only IPC and fictitious corporate entities and individuals as defendants in his initial complaint. ECF No. 1-1.

There is no dispute that the statute of limitations period expired before Plaintiff added ACC as a defendant on March 27, 2022 [ECF No. 15] and first moved to add Weyerhaeuser as a defendant on June 7, 2022 [ECF No. 28]. Plaintiff argues, however, that he is substituting these defendants as two of the fictitious corporate defendants he named in his initial complaint, pursuant to the fictitious defendant rule.[6]

Federal Rule of Civil Procedure 15(c)(1) provides that a plaintiff may revise his initial claim beyond the relevant statute of limitations if the claim "relates back" in a way contemplated by relevant state law. See Fed. R. Civ. P. 15(c); see also DeRienzo

---

[6] Although ACC does not have standing to argue that Weyerhaeuser should not be added as a defendant on futility grounds, see Chesler, Civ. No. 15-1825, 2019 WL 6318301, at *3, the Court will determine whether the claims against Weyerhaeuser are time-barred because if they are, it would be futile for Plaintiff to add Weyerhaeuser as a defendant. See Martin v. City of Reading, Civ. No. 12-03665, 2015 WL 390611, at *6 (E.D. Pa. Jan. 29, 2015).

v. Harvard Indus., Inc., 357 F.3d 348, 353 (3d Cir. 2004). "[A]s a general matter, if New Jersey law would permit the amendment made by plaintiff[] after the running of the statute, the federal rules permit the amendment." Bryan v. Associated Container Transp., 837 F. Supp. 633, 643 (D.N.J. 1993) (citing Jordan v. Tapper, 143 F.R.D. 567, 572 (D.N.J. 1992)). New Jersey's fictitious defendant rule allows for such an amendment beyond the statutory period:

> In any action, irrespective of the amount in controversy, other than an action governed by R. 4:4-5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained.

N.J.R. 4:26-4 (emphasis added); see also Bryan, 837 F. Supp. at 643 ("Thus, New Jersey law does provide a mechanism by which the name of a party not known to a plaintiff at the time of instituting a suit may be substituted for a fictitious name after the running of the statute.").

Plaintiff invoked the fictitious defendant rule within the statutory period by naming "ABC Corporations/Entities 1-10" and "John Doe/Jane Doe 1-10" as defendants in the initial complaint. See Carroll v. SetCon Indus. Inc., Civ. No. 10-4737, 2011 WL 736478, at *3 (D.N.J. Feb. 23, 2011). However, the fictitious party rule requires that Plaintiff include "an appropriate description

sufficient for identification" of the unknown party in the initial complaint. N.J.R. 4:26-4. "The description [of the fictitious defendant] must provide at least enough detail to form a basis for the unknown party's responsibility in the underlying transaction and state in general terms the cause of action asserted against them." Brookman v. Twp. of Hillside, Civ No. 09-2178, 2018 WL 4350278, at *3 (D.N.J. Sept. 12, 2018) (citing Viviano v. CBS, Inc., 503 A.2d 296, 305 (N.J. 1986)); DeRienzo, 357 F.3d at 353 (quoting Rutkowski v. Liberty Mut. Ins. Co., 506 A.2d 1302, 1306-07 (N.J. 1986)). "The specificity determination lies in whether the description of the fictitious defendants in the original pleading evinces the plaintiff's intention to bring a cause of action against the defendants later identified and named in the amended complaint." Carroll, Civ. No. 10-4737, 2011 WL 736478, at *3 (citing Farrell v. Votator Div. of Chemetron Corp., 299 A.2d at 398-99 (N.J. 1973)).

In the initial complaint, Plaintiff described defendant ABC Corporations/Entities 1-10 as:

> [C]orporations/entities authorized to conduct business in the State of New Jersey and does/did conduct business in Camden County, New Jersey, at all times relevant to the causes of action alleged herein, were responsible for the design, manufacturing, installation, maintaining, operating the machine/the hogger/the scrap conveyor, which caused Plaintiff's injuries as alleged herein and may be responsible to Plaintiff for damages whose identity is currently unknown and may become known during discovery.

ECF No. 1-1 ¶ 3. In the amended complaint that first added ACC as a defendant [ECF No. 15], Plaintiff alleged the following:

> 3. Defendant, Air Conveying Corporation (hereinafter "ACC"), designs, manufactures, sells, installs, inspections, and or maintains trim removal, shredding, and baling systems for the corrugated, printing, folding carton, wood and grain industries with a place of business located at 2196 E. Person Ave., Memphis, TN 38114.
>
> 4. Upon information and belief, Defendant, ACC, is authorized to conduct business in the State of New Jersey and do/did conduct business in Camden County, at all times relevant to the causes of action alleged herein.
>
> 5. At all times relevant to the causes of action alleged herein, Defendant, ACC, designed, manufactured, sold, distributed, installed, inspected, and or maintained the trench conveyor trim removal system, more specifically the machinery which Plaintiff was clearing debris from on June 9, 2019 at International Paper located at 370 Benigno Blvd., Bellmawr, New Jersey, when Plaintiff injured his left arm.

ECF No. 15 at 2 ¶¶ 3-5.

The Court finds that ACC, as the alleged manufacturer of the trench conveyor system, clearly falls within the fictitious party designation included in the initial complaint.[7] Plaintiff clearly

---

[7] This is distinguishable from Rutkowski because there, the plaintiff sought to substitute insurance companies as fictitious defendants but the plaintiff had described the fictitious defendants in the initial complaint as "the designers of, manufacturer of, seller of, distributor of, repairer of, modifier and/or renovator of, or . . . otherwise responsible for" the machine that injured the plaintiff. 506 A.2d at 1303 (emphasis added). The New Jersey Appellate Division held that the insurance companies did not fall under the umbrella of "otherwise responsible

intended to name the alleged manufacturer of the machine as a defendant. See Carroll, Civ. No. 10-04737, 2011 WL 736478, at *3 ("Since the beginnings of the practice of fictitious pleading, courts have based interpretations of the Rule's specificity requirement on the Plaintiff's intent at the time of filing the complaint.").

However, the Court finds that Plaintiff's fictitious defendant designation is not sufficient to identify Weyerhaeuser or ACC for Plaintiff's proposed claims regarding the electrical system of the trench conveyor system because Plaintiff failed to

---

for" because "[s]uch language would have put no insurer or other safety inspector on notice of the claim alleged." Id. at 1306. Plaintiff here is not seeking to add ACC under the term "responsible for" in the same way that the plaintiff did in Rutkowski. Plaintiff describes the fictitious defendants as entities "responsible for the design, manufacturing, installation, maintaining, operating the machine," which clearly includes ACC, who is alleged to have manufactured the subject machine. Accordingly, the Court is not persuaded by ACC's argument that the fictitious defendant description was too vague to have put ACC on notice of the claims in the initial complaint.

Defendant also argues that ACC cannot be added as a defendant pursuant to the fictitious defendant rule because: (1) Plaintiff only pleaded negligence claims against the defendants in the initial complaint (whereas now Plaintiff also asserts product liability claims) and (2) in the first amended complaint, in which ACC was first named as a defendant [ECF No. 15], Plaintiff did not reduce the number of fictitious corporate defendants from ten to nine, making it unclear that ACC was being substituted in as one of these fictitious defendants. The Court does not find that these deficiencies alone are sufficient to find that the fictitious defendant description in the initial complaint did not put ACC on notice of the claims because Plaintiff clearly intended to name the alleged manufacturer of the machine as a defendant. The Court does note that Plaintiff's initial complaint, and the subsequent filings in this case, have been far from the model of clarity.

include the term "component part" in his description of the fictitious defendants in the initial complaint. The New Jersey Supreme Court in Viviano found the complaint describing the fictitious defendant as the manufacturer of the subject machine sufficient to allege a cause of action against the manufacturer of a defective component part of the machine, but specifically advised: "For the future, however, a plaintiff who is injured in an industrial accident should at least name as fictitious parties, if their true identities are unknown, those entities that designed, manufactured, and maintained the subject machine and its component parts." 101 N.J. at 556 (emphasis added). Accordingly, since then, parties have included the "component part manufacturers" in their fictitious party descriptions, in addition to the manufacturer of the machine as a whole. See Albibi v. Tiger Mach. Co., Ltd., Civ. No. 11-5622, 2014 WL 1779360 (D.N.J. Apr. 30, 2014); Ryan v. Rexworks, Inc., Civ. No. 06-5866, 2008 WL 4066363 (D.N.J. Aug. 26, 2008).

Further, a court in this District found a plaintiff's failure to include the manufacturer/designer of the subject machine's component parts in the fictitious defendant description sufficient to deny that plaintiff leave to amend the initial complaint to substitute a component part manufacturer as a fictitious defendant beyond the statute of limitations. See Powasnick v. Bietzel Corp., Civ. No. 20-12275, 2022 WL 16552836 (D.N.J. Oct. 31, 2022). Thus,

the Court finds that Plaintiff cannot utilize the fictitious defendant rule to add product liability claims regarding the trench conveyor system's electrical system against Weyerhaeuser and ACC.[8]

Because the Court has determined that Plaintiff invoked the fictitious defendant rule and sufficiently described ACC in the initial complaint to assert product liability claims for the trench conveyor system as a whole, the Court must next consider: (1) whether Plaintiff exercised due diligence in identifying ACC before the statute of limitations period expired; (2) whether the lapse of time in adding ACC to the case has prejudiced ACC; and (3) whether Plaintiff exercised due diligence in substituting ACC once it was identified after the statute of limitations period had already expired. See Brookman, Civ No. 09-2178, 2018 WL 4350278, at *3 (citing Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 277 (3d Cir. 2004)).

In the context of the fictitious defendant rule, the New Jersey Supreme Court has not provided a standard definition of diligence, noting that "the meaning of due diligence will vary with the facts of each case." DeRienzo, 357 F.3d at 354 (quoting O'Keeffe v. Snyder, 416 A.2d 862, 873 (1980)). "The Fictitious

---

[8] The Court notes that even if the description of the fictitious defendant was sufficient to include Weyerhaeuser, Plaintiff did not act diligently in seeking leave to add Weyerhaeuser to the complaint after the statute of limitations period expired. See infra note 10.

Defendant Rule allows the amendment of the complaint to relate back to the date of the original filing if the plaintiff could not have determined the identity of the unknown party before the expiration of the statute of limitations, even after undertaking reasonably diligent investigation and research. If, on the other hand, the plaintiff should reasonably have determined the unknown party's identity within the statutory period, yet failed to do so, then the Rule does not allow the proposed amendment to the complaint to relate back." <u>Carroll</u>, Civ. No. 10-4737, 2011 WL 736478, at *6 (citations omitted).

"[P]laintiffs must 'investigate all potentially responsible parties in a timely manner' to cross the threshold for due diligence." <u>DeRienzo</u>, 357 F.3d at 354 (quoting <u>Matynska v. Fried</u>, 811 A.2d 456, 457 (2002)). "Generally, however, when determining due diligence, courts consider the plaintiff's efforts—such as obtaining [publicly] available information, conducting depositions of relevant parties, interviewing witnesses—which would generally be construed as a calculated attempt to ascertain the identity of the fictitious party." <u>Id.</u> (citations omitted).

The Court denied Plaintiff's first motion for leave to file a second amended complaint in part because Plaintiff "failed to fully explain, either by certification or otherwise, what resulted in the delay in proposing these amendments (in particular – adding ACC and Weyerhaeuser as defendants) . . . ." ECF No. 37 at 5-6

(footnote omitted). Plaintiff had only explained that "[f]ollowing exchange of initial discovery between Plaintiff and Defendant, International Paper, Plaintiff received information that Air Conveying Corporation [] manufactured and sold the equipment/machine on which Plaintiff was injured." ECF No. 28 at 2-3. Plaintiff did not explain when it learned of ACC and Weyerhaeuser's alleged involvement, or what steps it took to identify these defendants before the statute of limitations expired.

In opposition to the current Motion, ACC argues that Plaintiff failed to exercise due diligence in identifying ACC before the statute of limitations expired. ECF No. 40 at 19-20. ACC argues that on July 9, 2019, one month after the alleged incident occurred, Plaintiff's counsel sent a preservation letter to IPC, requesting IPC "preserve[] any and all evidence including but not limited to the original machinery . . . ."[9] Id. at 19. Yet, Plaintiff's counsel "has not inspected [the machine] since issuing the preservation letter and has provided no credible reasoning as to why he could not inspect the machine within the last four years." Id. at 20.

---

[9] The Court notes that ACC indicated in its brief that it attached this letter for the Court's review as Exhibit F to the brief. However, the letter does not appear to have been filed with the Court; only Exhibits A through E were appended to the brief.

The Court finds that Plaintiff has sufficiently demonstrated his diligence in identifying ACC as a defendant. Plaintiff's counsel appended a certification to the Motion, in which she explained the efforts taken to identify ACC both before and after the statute of limitations period expired. ECF No. 38 at 29-31.

Regarding efforts to identify ACC before the statute of limitations period expired, counsel explained that IPC "would not permit Plaintiff the opportunity to fully inspect the trench conveyor" prior to filing the lawsuit. ECF No. 38 at 29. Then, "[w]hen IPC finally agreed to an inspection, Plaintiff's expert was only permitted a visual inspection of the Conveyor on June 1, 2021, while the same was in operation." Id. at 30. "IPC refused to shut down the Machine and Plaintiff's expert could not obtain a full inspection of the machinery, including who manufactured same. During the limited inspection, IPC's representative, Ms. Gretchen, indicated that she would require a court order to shut down the Machine for a full inspection as shutting down same would require shutting down the entire plant." Id. Thus, Plaintiff's counsel did attempt to inspect the subject machine prior to the statute of limitations period expiring but was unable to for reasons outside of her control. Further, when counsel was finally able to inspect the machine on June 1, 2021 (a week before the statute of limitations deadline), she was only able to conduct a "limited" inspection and was unable to identify the manufacturer of the

17

machine from this inspection. The Court finds that this constitutes diligence in identifying ACC prior to the statute of limitations, even if Plaintiff's counsel could have "done more" to try and identify ACC during that time. See, e.g., Carroll, Civ. No. 10-4737, 2011 WL 736478, at *7 (finding plaintiff acted diligently in identifying the fictitious defendant when the existing defendant identified the fictitious defendant one week before the expiration of the statute of limitations).

The Court also finds that Plaintiff acted diligently in identifying ACC after the statute of limitations period expired, and in adding ACC to the complaint. Plaintiff's counsel represented that on March 12, 2022, Plaintiff received IPC's responses to Plaintiff's First Set of Interrogatories, as well as "hundreds of pages of documents [in response] to [Plaintiff's] discovery responses." ECF No. 38 at 30. In one of IPC's responses to Plaintiff's interrogatories, IPC identified ACC as the "manufacturer, designer and installer of the Machine on which Plaintiff was injured." Id. Within two weeks, on March 27, 2022, Plaintiff filed the first amended complaint naming ACC as a defendant. ECF No. 15. Thus, the Court finds that Plaintiff acted diligently in adding ACC as a defendant upon learning of its identity during the exchange of discovery with IPC.[10]

---

[10] Although the Court found that the claims against Weyerhaeuser as manufacturer/designer of the electrical system are time-barred

Lastly, the Court finds that granting Plaintiff's Motion with respect to adding claims against ACC for the trench conveyor system would not prejudice ACC. While "[t]he New Jersey Supreme Court has not indicated whether the passage of time alone can prejudice a newly-named defendant," DeRienzo, 357 F.3d at 356, "New Jersey courts have noted certain factors where substitution of a newly-named defendant would cause substantial prejudice . . . includ[ing] destruction or alteration of evidence after the initial discovery period, frustration of attempts at subsequent examination, or witness unavailability or memory lapse due to delay." Id.

---

because Plaintiff failed to specify the manufacturer/designer of the machine's "component parts" in the fictitious party designation in the initial complaint, the Court notes that even if the Court broadly read the description to encompass Weyerhaeuser anyway, Plaintiff did not act diligently in adding Weyerhaeuser as a defendant. It appears to the Court that Plaintiff could have added Weyerhaeuser in March 2022 when it added ACC, but it did not until June 2022. Plaintiff acknowledges that on March 12, 2022, he received responses to interrogatories and "hundreds of pages of documents" from IPC. ECF No. 38 at 30. In reviewing the responses to the interrogatories, Plaintiff's counsel noted that ACC was identified as the machine manufacturer, so counsel quickly filed an amended complaint. Id. However, Plaintiff notes that after the amended complaint was filed, "during its review of the voluminous documents provided by IPC in its discovery responses, Plaintiff learned that Weyerhaeuser designed the electrical system for the Conveyor designed and manufactured by ACC." Id. at 30. It appears that these are the same documents that were produced to counsel with the interrogatory responses in March 2022, so had counsel reviewed the documents with the interrogatory responses, counsel would have been able to add ACC and Weyerhaeuser to the amended complaint at the same time. Therefore, Plaintiff could have added Weyerhaeuser as a defendant earlier than June 2022. Thus, the Court finds that Plaintiff did not exercise due diligence in adding Weyerhaeuser as a defendant.

ACC argues generally that because of the length of time that passed between the alleged incident and Plaintiff's addition of ACC to the complaint, there will be spoliation of evidence. ECF No. 40 at 30 ("ACC must not now be responsible for Williams's lack of due diligence and take the onus to defend a product that had once accessibility to evidence, but over time has lost special evidence."). However, aside from this general claim of spoliation, ACC has not explained what "special evidence" is no longer available. Without a more specific showing, at this time, the Court is unable to find that ACC will be prejudiced from its addition as a defendant sufficient to deny Plaintiff leave to do so. Further, "in determining whether to allow the amendment to the complaint beyond the statute of limitations based on the Fictitious Defendant Rule, courts look to whether '[j]ustice impels strongly towards affording the plaintiffs their day in court' considering the 'absence of prejudice, reliance or unjustifiable delay.'" Carroll, Civ. No. 10-4737, 2011 WL 736478, at *9 (quoting Viviano, 503 A.2d at 302). Thus, the Court finds that Plaintiff has established all three elements of the fictitious defendant rule for Plaintiff's claims against ACC regarding the trench conveyor system.

Accordingly, the Court finds that Plaintiff's claims against ACC regarding the trench conveyor system are not time-barred, but Plaintiff's claims against ACC and Weyerhaeuser regarding the trench conveyor system's electrical system are time-barred.

2) <u>Whether the remaining claims against ACC are sufficiently pleaded</u>

To determine whether a proposed claim is futile, the Court typically evaluates whether the claim "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Parker v. City of Newark</u>, Civ. No. 17-4615, 2018 WL 10809348, at *4 (D.N.J. Sept. 13, 2018). This is the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). Futility can also be found "in proposed amendments that . . . fail to fix the defect in the preceding pleading . . . ." <u>Pew v. Boggio</u>, Civ. No. 15-1042, 2016 WL 3001136, at *4 (M.D. Pa. May 25, 2016) (citing <u>Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1434 (3d Cir. 1997)).

Plaintiff's proposed second amended complaint seeks to add a manufacturing defect claim, a design defect claim, and a failure to warn claim against ACC for the trench conveyor system, albeit all in one count (count two).[11] <u>See</u> ECF No. 38 at 18-19. The Court

---

[11] The Court does not address the sufficiency of the manufacturing defect, design defect, and failure to warn defect claims asserted against ACC for the electrical system of the trench conveyor system because the Court already found them to be time-barred.

The Court also notes that the heading of Count 2 in Plaintiff's proposed second amended complaint references "negligence" in addition to "product liability/manufacturing defect/defective design/failure to warn/strict liability." ECF No. 38 at 18. To the extent Plaintiff is attempting to assert a negligence claim, the New Jersey Product Liability Act, N.J.S.A. 2A:58C-1 to -11 ("PLA"), is "the exclusive remedy for personal

noted in its January 24, 2023 Order denying Plaintiff's first motion for leave to file a second amended complaint that, although it reserved its decision on the merits, Plaintiff's proposed design defect claim against ACC appeared to be insufficiently pleaded. ECF No. 37. The Court also noted that it was unclear whether Plaintiff was even asserting a manufacturing defect claim and a failure to warn claim. Id. Defendant argues that Plaintiff's renewed Motion should be denied because Plaintiff still fails to sufficiently plead the elements of these three claims. ECF No. 40 at 21-28.

　　The Court accepts the allegations in the complaint as true, as required when conducting a Rule 12(b)(6) analysis. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2007). The PLA provides:

> 　　A manufacturer or seller of a product shall
> be liable in a product liability action only if
> the claimant proves by a preponderance of the
> evidence that the product causing the harm was not

---

injury claims arising out of product use." Becker v. Smith & Nephew, Inc., Civ. No. 14-5452, 2015 WL 268857, at *2 (D.N.J. Jan. 20, 2015). The PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." Hindermeyer v. B. Braun Med. Inc., 419 F. Supp. 3d 809, 817 (D.N.J. 2019) (quoting Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991)). "The PLA 'no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for harm, including personal injury, caused by a defective product or an inadequate warning.'" Id. (quoting Koruba v. Am. Honda Motor Co., Inc., 935 A.2d 787, 795 (N.J. App. Div. 2007)). Thus, to the extent that Plaintiff seeks to assert a negligence claim against ACC in the second amended complaint, apart from the PLA claim, the Court denies Plaintiff leave to do so. See also Barrett v. Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 825 (D.N.J. 2021).

> reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C-2. To assert a prima facie cause of action under the PLA, a plaintiff must show four elements: (1) the product was defective;[12] (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user. Mendez v. Shah, 94 F. Supp. 3d 633, 647 (D.N.J. 2015) (quoting Myrlak v. Port Auth. of New York & New Jersey, 723 A.2d 45 (N.J. 1999)).

To start, the Court finds that Plaintiff sufficiently pleaded elements two through four. Satisfying element two, Plaintiff alleges that the "trench conveyor trim removal system developed, manufactured and sold by ACC remained unchanged and was in the same condition at the time of the injuries alleged herein." ECF No. 38 at 18 ¶ 38. Satisfying element three, Plaintiff alleges that "[a]s a direct and proximate cause of ACC's developing, manufacturing, selling and/or installing and maintaining a defectively designed product. Plaintiff sustained permanent

---

[12] The pleading requirements for this element are different for each of the three claims.

physical and emotional injuries." Id. at 18 ¶ 40. Regarding element four, under count five (which asserts the product liability claims asserted against Weyerhaeuser), Plaintiff asserts that he "was a reasonably foreseeable user of the subject equipment." Id. at 23 ¶ 56. The Court will read the complaint as a whole and liberally construe this pleading to satisfy element four for purposes of asserting a cause of action under the PLA against ACC. The Court will next address whether Plaintiff sufficiently pleaded that "the product was defective" for each of the three asserted claims.

Under New Jersey law, to establish a failure to warn "defect" a plaintiff must show that a product "failed to contain adequate warnings or instructions." Garten v. Intamin Amusement Rides Int. Corp. Est., Civ. No. 19-20040, 2020 WL 4745780, at *8 (D.N.J. Aug. 17, 2020) (quoting N.J.S.A. § 2A:58C-2). "An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product." Id. (quoting N.J.S.A. § 2A:58C-4). "Plaintiff must then prove the breach of duty (the absence of a warning) was a proximate cause of the accident." Barrett v. Tri-Coast Pharmacy, Inc., 518 F. Supp. 3d 810, 826 (3d Cir. 2021).

Plaintiff asserts in the proposed second amended complaint that, "Despite the equipment/machine's defective condition,

Defendant, ACC, failed to warn Plaintiff/Consumers and/or Weyerhaeuser/International Paper of the danger of removing debris from the machine while there were unguarded moving parts." ECF No. 38 at 19 ¶ 39. Plaintiff also asserts, "ACC knew about some aspect of its product that posed a danger to consumers, failed to warn consumers about that danger. ACC was aware of the dangerous aspect of the product, and any reasonable person in ACC's position would have disclosed that information to consumers. The most reasonable consumers would not be aware of the dangerous aspect of the product." ECF No. 38 at 19 ¶ 42. The Court finds that although Plaintiff's pleadings for the failure to warn claim are minimal, they are sufficient to state a plausible claim for relief. See also Barrett, 518 F. Supp. 3d at 827.

To establish a design defect, "[t]he plaintiff must demonstrate that the 'product [was] manufactured as intended but the design render[ed] the product unsafe." Vicente v. DePuy Synthes Cos., 570 F. Supp. 3d 232, 241 (D.N.J. 2021) (quoting Sich v. Pfizer Pharm., Civ. No. 17-2828, 2017 WL 4407930, at *2 (D.N.J. Oct. 4, 2017)). At the pleading stage, this requires a plaintiff to assert that the product's risk outweighs its utility[13] or that

---

[13] The New Jersey Supreme Court recognized seven factors that courts should consider when performing such a risk-utility analysis: (1) the usefulness and desirability of the product—its utility to the user and to the public as a whole; (2) the safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury; (3) the availability of a substitute

a reasonable alternative design exists. See Hindermeyer, 419 F. Supp. 3d at 823-24.

Plaintiff asserts that the trench conveyor trim removal system "was defective including but not limited to the machine failing to provide adequate guards for hazardous moving parts which resulted in Plaintiff's injuries." ECF No. 38 at 18 ¶ 35. Further, "[t]he trench conveyor trim removal system as manufactured/designed which failed to guard hazardous moving parts was unacceptably harmful or unsafe and unreasonably dangerous to consumers at the time ACC developed, manufactured and/or sold it." Id. at 18 ¶ 37. "While not stated in explicit terms," the Court finds that these allegations are sufficient to plead that a reasonable alternative design exists (one that includes guards for the hazardous moving parts) and also "that the risk of using the [machine] outweighs its utility." Barrett, 518 F. Supp. 3d at 826

---

product that would meet the need and not be as unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions; and (7) the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance. Becker, Civ. No. 14-5452, 2015 WL 268857, at *4 (citing Johansen v. Makita U.S.A., Inc., 607 A.2d 637, 642-43 (N.J. 1992)).

(citing <u>Fabricant v. Intamin Amusement Rides Int. Corp. Est.</u>, Civ. No. 19-12900, 2020 WL 373348, at *4 (D.N.J. Jan. 23, 2020)).

To establish a manufacturing defect, a plaintiff must prove that the product "deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. § 2A:58C-2(a); <u>see also</u> <u>Hindermeyer</u>, 419 F. Supp. 3d at 824. A plaintiff can establish this by demonstrating that the product failed to conform to the manufacturer's standards or to other units of the same kind. <u>Id.</u> (citing <u>Mendez</u>, 28 F. Supp. 3d at 298). In the proposed second amended complaint, Plaintiff pleads that:

> The product as produced deviated from its design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae. Specifically, the vacuum trim collection chute of the conveyor did not enclose the idle roller assembly which allowed excess trim to collect around the idle rollers in the conveyor pit. There are two pulleys rotating in proximity to each other and in proximity to 4 moving belts. The pulleys and the belts are unguarded. Visual inspection conducted from above the pit shows that the pulleys created an in running nip hazard with each other, while the belts runs outward.

ECF No. 38 at 19 ¶ 41. The Court finds that this sufficiently asserts a manufacturing defect because Plaintiff identified a specific flaw in the manufacturing process that resulted in the alleged defect. At the pleading stage, "the plaintiff need not

prove the nature or etiology of the manufacturing defect with scientific precision" because "the evidence of a flaw in the manufacturing process is uniquely within the knowledge and control of the manufacturer." <u>Barrett</u>, 518 F. Supp. 3d at 826 (quoting <u>Vicente v. Johnson & Johnson</u>, Civ. No. 20-1584, 2020 WL 7586907, at *11 (D.N.J. Dec. 21, 2020)). Here, however, Plaintiff did plead such a flaw, thereby sufficiently pleading a manufacturing defect.

Accordingly, the Court finds that Plaintiff sufficiently pleaded a design defect claim, manufacturing defect claim, and failure to warn claim against ACC for the trench conveyor system.[14]

3) <u>Whether the remaining claims against ACC are barred by the statute of repose</u>

---

[14] The Court notes that the sixth count in Plaintiff's proposed amended complaint is "negligent hiring/retention/supervision." ECF No. 38 at 24. Plaintiff names IPC, ACC, Weyerhaeuser, and the fictitious corporations/entities and individuals in the heading of this count. <u>Id.</u> However, Plaintiff does not mention ACC (or Weyerhaeuser) in the allegations supporting this claim. <u>See id.</u> at 24-25 ¶ 62 ("At all times relevant to the causes of actions alleged herein, Defendants John Doe/Jane Doe 3- 10, are fictitious defendants, who are employees, agents, servants, managers, supervisors, of Defendant, International Paper and or ABC Corporations/Entities 3-10,"). Further, ACC does not address this claim in its opposition brief. Thus, to the extent that Plaintiff's Motion even seeks to bring this claim against ACC, the Motion is **DENIED**.

As to Weyerhaeuser, the Court already determined, <u>infra</u>, that the statute of limitations bars Plaintiff from adding Weyerhaeuser as a defendant. As to IPC, the Court will not, at this time, dismiss this claim because IPC has not opposed this Motion and has already answered Plaintiff's first amended complaint that included this claim. <u>See</u> ECF Nos. 15-16. The allegations in the negligent hiring/retention/supervision claim in Plaintiff's first amended complaint [ECF No. 15 at 9 ¶¶ 31-33] are substantively the same as the ones in Plaintiff's proposed amended complaint [ECF No. 38 at 25 ¶¶ 61-63].

N.J.S.A. § 2A:14-1.1(a), a statute of repose governing improvements to real property, provides in pertinent part:

> No action . . . to recover damages for any deficiency in the design, planning, surveying, supervision or construction of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing of such services and construction. This limitation shall serve as a bar to all such actions . . . at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.

N.J. Stat. Ann. § 2A:14-1.1 To invoke the protections of the statute of repose, the defendant must prove: "(1) the injury sustained by plaintiff resulted from a defective and unsafe condition of an improvement to real property; (2) [the defendant was] responsible for performing or furnishing the design, planning, surveying, supervision of construction, or construction of the improvement; and (3) the injury occurred more than ten years after the performance or furnishing of the services." Fabricant, Civ. No. 19-12900, 2020 WL 373348, at *3 (quoting Dziewiecki v. Bakula, 853 A.2d 234, 236 (N.J. 2004)) (alteration in original).

Defendant argues that the trench conveyor system, the machine that allegedly injured Plaintiff, is an "improvement to real property" under the statute and because "ACC sold the conveyor system to Weyerhaeuser in 2005 and the trim conveyor system was

substantially completed in 2006," Plaintiff's claims are untimely because more than ten years have passed since the system was installed. ECF No. 40 at 8-13. ACC also argues that the "trench conveyor system was not a standardized building product." Id.

Plaintiff argues that whether the trench conveyor system is an improvement to real property under the statute is an issue "which may be brought by way of a summary judgment motion subsequent to the conclusion of discovery" and is "premature to find at this stage in the litigation" because no discovery has been exchanged between the parties. ECF No. 42 at 3-4.

The Court agrees with Plaintiff that it is too early in the litigation to determine whether the statute of repose bars Plaintiff's suit because the facts that the Court must evaluate to make such a determination are in dispute. See Route 18. Cent. Plaza v. Beazer East, Inc., 54 F. App'x 345, 349 (3d Cir. 2002) (reversing district court's granting of defendant's motion to dismiss, finding it "inappropriate at this early stage" to determine whether the statute of repose barred the suit because "further factual development was required"); Fabricant, Civ. No. 19-12900, 2020 WL 373348, at *3-4 (not reaching the issue of whether the statute of repose bars plaintiff's claims at the motion to dismiss juncture because the analysis "would require additional facts, extraneous to the Second Amended Complaint, that the Court is unable to consider at this stage in the case."). The Court notes

that this case is still in its early stages; only some discovery has been exchanged. Further, a cursory examination of the case law surrounding the statute of repose casts doubt on ACC's argument that the trench conveyor system is clearly an improvement to real property in a way contemplated by the statute. See Aly v. Fed. Express, Inc., Civ. No. 04-3886, 2008 WL 4378233 (D.N.J. Sept. 23, 2008) (finding, at the summary judgment stage, that a conveyor system was not an improvement to real property under the statute of repose because it "has no impact on the structural integrity of the building or does not somehow permanently alter the real property").

Therefore, the Court will not deny Plaintiff's Motion on the ground that the claims against ACC are barred by the statute of repose at this time. However, the Court's ruling does not foreclose Defendant from raising a statute of repose defense, if applicable, after further factual development in the case is completed.

**Accordingly, IT IS** on this **5th day** of **September 2023**,

**ORDERED** that Plaintiff's Motion [ECF No. 38] is **DENIED in part** and **GRANTED in part**. Plaintiff shall file an amended complaint consistent with the foregoing by **September 12, 2023** and serve it upon defendants consistent with Federal Rule of Civil Procedure 4; and it is further

**ORDERED** that the Court will convene a status conference with counsel on **October 20, 2023** at **11:30 a.m.** The call-in number is

**888-808-6929, access code 2170922#**. Counsel shall meet and confer and submit a letter to the Court by **October 11, 2023** with proposed scheduling deadlines, as the discovery and dispositive motion deadlines had been adjourned. <u>See</u> ECF No. 22.

<u>s/ Matthew J. Skahill</u>
MATTHEW J. SKAHILL
United States Magistrate Judge
