[ECF No. 84]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

KWAMI WILLIAMS,

                              Plaintiff,

        v.                                              Civil No. 21-19765 (MJS)

INTERNATIONAL PAPER COMPANY,
et al.,

                              Defendants.

### OPINION AND ORDER

This matter comes before the Court on the letter, ECF No. 84, filed by defendant International Paper Company ("IPC") renewing its motion to dismiss the fourth amended complaint ("FAC"), ECF No. 78, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Kwami Williams ("Plaintiff") opposes dismissal as unwarranted as a matter of law. ECF No. 88. The Court hears this matter with the written consent of the parties to conduct all proceedings in this matter in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. ECF Nos. 13, 27. Having considered the parties' submissions,[1] the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, IPC's letter motion is **DENIED**.

---

[1] Defendant Air Conveying Corporation ("ACC") filed its answer to the FAC on August 9, 2024, and has not taken a position as to IPC's motion to dismiss. ECF No. 80.

1

I.    **Background**[2]

Plaintiff was hired by IPC as a machine operator in its Bellmawr, New Jersey, location in April 2015. ECF No. 78 at ¶8. IPC is a pulp and paper company that operates its Bellmawr location as a corrugated box manufacturing facility. Id. at ¶2. As part of the box-making process, "materials are fed through the trench conveyor trim removal system." Id. at ¶10. The trench conveyor trim removal system is a piece of machinery comprised of a system of conveyor belts and pulleys which deliver waste materials to a collection chute. Id. at ¶67. In general, "most of the waste material" is collected by the system, but not all of it, and some "falls off the conveyor belt and lands in the pit/trench area." Id. at ¶11. This area "is about five feet deep" and must be accessed by ladder. Id. at ¶26. An overaccumulation of waste in the pit area can create a fire hazard and pose a risk of jamming the system's conveyor belt. Id. at ¶11. As a result, IPC employees cleaned the pit area "manually." Id. at ¶11. However, IPC did not specially train employees in cleaning the pit area, and there was "no one employee or group of employees at the Bellmawr facility . . . whose job duty . . . was to remove the waste from the trench conveyor trim removal system." Id. at ¶¶27-28. Instead, IPC "often offered entry level employees[] a few 'overtime hours' to clean the pit/trench." Id. at ¶28.

On June 9, 2019, the day of Plaintiff's injury, Plaintiff was cleaning the pit/trench of the trench conveyor trim removal system. Id. at ¶42. At the direction of his supervisor, Plaintiff did so "while the machine was still in operation and the conveyor belt was in motion." Id. at ¶43. Although IPC "was fully aware of the danger of exposing employees to machines that

---

[2]  For the purposes of this Motion, the Court accepts as true all the factual allegations in the FAC, as well as all reasonable inferences that could be drawn from them, and construes them in a light most favorable to Plaintiff. See Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010).

were not completely stopped and de-energized prior to cleaning and unjamming same because of prior OSHA, [California regulator], and complaints from employees who were not trained and/or previously injured," id. at ¶33, "employees were directed to clean [the] pit/trench while the trench conveyor trim removal system was still in operation." Id. at ¶30. The removal system's moving parts were "unguarded" by design, and there were "no safety guards in place" at the time of Plaintiff's accident. Id. at ¶¶67, 24 Thus, while Plaintiff was "cleaning the debris, the roller on the conveyor belt caught Plaintiff's gloves and rolled his left hand into the machine," ultimately crushing Plaintiff's left arm. Id. at ¶43. Because the employees who cleaned the pit area did not have access to and "were not trained in lock out tag out (LOTO)" procedures, other employees on the floor were unable to stop the machine without the assistance of a manager. Id. at ¶¶40-41.

Plaintiff filed suit on or about June 8, 2021, in the Superior Court of New Jersey, Camden County, alleging that IPC had "committed an intentional tort by inducing its employee, Plaintiff, who was not trained or qualified to enter the scrap trench conveyor area, with overtime pay to perform the dangerous task of cleaning the pit while the machine and plant was in full operation." ECF No. 1-1 at ¶20. Plaintiff also asserted claims of negligent hiring/retention and a respondeat superior theory of negligence based on the unidentified supervisor's directives. Id. at ¶¶31-36. IPC subsequently removed the action to federal court on November 5, 2021, on the basis of diversity jurisdiction. ECF No. 1. Plaintiff filed his first amended complaint on March 27, 2022, which joined ACC to the action and alleged products liability and negligent supervision claims against it. ECF No. 15 at ¶¶31-35. After ACC filed a motion to dismiss the first amended complaint for, among other things, failure to state a claim and insufficient pleading [ECF No. 23], Plaintiff sought leave to amend his complaint to

address the deficiencies identified by ACC and further clarify his claims. ECF No. 28. Plaintiff ultimately filed his second amended complaint on September 12, 2023.[3] ECF No. 46. The Court held a conference with counsel for all parties on October 20, 2023, at which the parties raised the issue of a potential third amended complaint ("TAC"). ECF No. 54. Following this conference, the Court directed Plaintiff's counsel to confer with counsel for defendants "so that th[e] complaint is filed on consent and consistent with the Court's earlier order." Id. With the consent of all parties, the TAC was filed on October 27, 2023. ECF No. 55. On December 8, 2023, ACC filed an answer to the TAC and IPC moved to dismiss the TAC. ECF Nos. 63, 64.

<u>Dismissal of the Third Amended Complaint</u>

On June 28, 2024, the Court granted IPC's motion to dismiss the third amended complaint ("TAC"). ECF No. 74. The second through fifth counts were dismissed "[b]ecause Plaintiff acknowledge[d] in his brief that 'only the First Count is directed towards IPC alleging an "Intentional Tort."'" Id. at 6 n.5. "Taking all of the allegations in the TAC as true and giving Plaintiff the benefit of all reasonable inferences, the Court [found] that the facts as alleged in the TAC [did] not plausibly demonstrate that IPC's alleged practices rise to the level of intentional wrong." Id. at 10. The Court accepted, "for the purposes of [that] motion," "that

---

[3]   This Court initially denied Plaintiff's motion without prejudice due to the motion's noncompliance with the pertinent local rules, failure to explain why amendment was proper under Federal Rule of Civil Procedure 15(a)(2), and insufficient pleading regarding the applicable statutes of limitations and Plaintiff's claims against ACC. ECF No. 37. Plaintiff renewed his motion as directed by the Court on February 13, 2023, after correcting these deficiencies. ECF No. 38. In an opinion and order dated September 5, 2023, this Court granted the renewed motion as it pertained to the products liability claims against ACC, but denied the motion insofar as Plaintiff sought to add claims against Weyerhaeuser Company regarding its alleged design of the machine's electrical system. ECF No. 43.

clearing the pit area carried a great risk of injury." Id. However, the Court observed the TAC alleged IPC "was 'aware of the risk and danger of cleaning the pit/trench area while the trench conveyor trim removal system was in operation,'" yet under New Jersey law "mere awareness of a risk does not equate to a virtual certainty of injury." Id. (citing Van Dunk v. Reckson Assocs. Realty Corp., 45 A.3d 965, 978 (N.J. 2012); Millison v. E.I. du Pont de Nemours & Co., 501 A.2d 505, 514-15 (N.J. 1985)).

Further, the Court found "the TAC [did] not allege the existence of any safety standard or protocol, internal or external, that would have put IPC on notice that clearing the trench area without stopping operations carried a substantial certainty of injury." Id. at 11. "Moreover, the TAC [did] not allege that there were any prior incidents or injuries, employee complaints, or OSHA citations arising out of IPC's decision." Id. The Court also found the TAC deficiently plead the context prong, "because it contains no facts which would suggest that Plaintiff's injury and the circumstances surrounding it were 'more than a fact of life of industrial employment.'" Id. at 12 (quoting Hocutt v. Minda Supply Co., 235 A.3d 1047, 1059 (N.J. App. Div. 2020)).

The Court held that "[b]ecause it is not clear that any attempt to amend the complaint against IPC would be futile, Plaintiff should have one last opportunity to state a sufficient factual basis for the 'conduct' and 'context' elements of IPC's alleged 'intentional wrong,' if counsel can do so within the constraints of Fed. R. Civ. P. 11(b)." Id. at 13. The Court provided Plaintiff fourteen days to file "an amended complaint reasserting his intentional tort claim to the extent he can in good faith cure the deficiencies identified herein." Id. The Court extended this deadline until July 26, 2024, upon a joint application by the parties. ECF No. 77.

5

<u>The Fourth Amended Complaint</u>

Plaintiff filed the FAC on July 26, 2024. ECF No. 78. The FAC states four counts: (1) intentional tort by IPC; (2) products liability against defendant ACC; (3) negligence claims against fictitious defendants based on the conduct of employees pled as fictitious defendants, under a theory of respondeat superior; (4) negligent hiring/retention/supervision against fictitious defendants; and (5) products liability claims against fictitious defendants.

IPC filed this renewed motion to dismiss in lieu of an answer on August 23, 2024. ECF No. 84. Plaintiff's opposition to the motion was received on September 6, 2024. ECF No. 88.

## II.    Legal Standard

"In a Rule 12(b)(6) motion, the court evaluates the merits of the claims by accepting all allegations in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law." <u>Gould Elecs. Inc. v. U.S.</u>, 220 F.3d 169, 178 (3d Cir. 2000). "The defendant bears the burden of showing no claim has been stated." <u>Id.</u> "The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice." <u>Alsaidi v. Hubert</u>, 750 F.Supp.3d 411, 416 (D.N.J. 2024).

The Third Circuit frames this analysis in three steps: (1) identify "the elements plaintiff must plead to state a claim;" (2) identify allegations that merely restate the elements of a claim, because conclusions "are not entitled to the assumption of truth;" and (3) assume the remaining allegations are true and "determine whether they plausibly give rise to an entitlement to relief." <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 787 (3d Cir. 2016) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675-79 (2009)).

## III.    Discussion

IPC argues the FAC fails to cure the deficiencies within the prior complaints because "[n]one of the new allegations . . . demonstrate intentional conduct as to Plaintiff or knowledge of 'substantial certainty' of Plaintiff's injury, as required under the case law." ECF No. 84 at 2. IPC asserts that even if it were true "that IPC ignored OSHA's guidance regarding safety procedures (which IPC disputes), such conduct still falls short of the high standard required to establish an intentional wrong under the [Workers' Compensation] Act." Id. IPC maintains the same logic applies to any decision "to forego additional training and to continue production while employees cleared the trench area." Id. at 4. Additionally, IPC asserts some of Plaintiff's new allegations concern different equipment and other unrelated circumstances that do not establish intentional conduct. Id. at 5-6. "The result of applying such a broad brush, unconnected to Plaintiff's accident, is that any incident could be exempted from the Workers' Compensation exclusive remedy bar so long as there have been any prior workplace accidents within the company." ECF No. 89 at 2.

Plaintiff contends the deficiencies spotlighted by the Court in its dismissal of the TAC were cured in the FAC. ECF No. 88 at 1. Plaintiff argues any inconsistencies identified by IPC between Plaintiff's injury and other incidents described in the complaint are not addressable in a motion to dismiss, where all reasonable factual inferences must be drawn in Plaintiff's favor. Id. at 2. Plaintiff asserts these other incidents establish "that more than 15,000 injuries occurred as a result of [IPC's] conduct." Id. at 9.

As a threshold matter, counts two through five are not subject to this motion to dismiss, as the counts are alleged against ACC and fictitious defendants, not movant IPC. Plaintiff followed this Court's guidance in dismissing the TAC to revise these counts "to remove

references to IPC as to those counts" because "it appear[ed] undisputed that the second through fifth counts of the TAC should be dismissed against IPC." ECF No. 78 at 13.

The Court's dismissal of the TAC identified two general legal deficiencies in the pleading: (1) the conduct prong was not "pled [with] sufficient facts to plausibly demonstrate that IPC acted with the knowledge that its conduct carried a 'substantial certainty' of injury or death;" and (2) the context prong insufficiently pled Plaintiff's "injury and the circumstances in which the injury [was] inflicted are 'plainly beyond anything the legislature could have contemplated as entitling the employee to recover <u>only</u> under the Compensation Act.'" ECF No. 74 at 7-8 (quotations omitted).

<u>Conduct</u>: Like the TAC, the FAC alleges that IPC's alleged "intentional wrong" lies in its decision to direct Plaintiff, an individual who was "not trained or qualified to enter the scrap trench conveyor area," to clear the trench area "in proximity to hazardous moving parts" while the machine was in "full operation" without providing access to the machine's LOTO procedures. ECF Nos. 74 at 10; 78 at ¶¶46-47. The FAC further mirrors the TAC in alleging that the hazard stemmed from the "unguarded" pulleys which created a "nip hazard" with each other. ECF Nos. 74 at 10, 78 at ¶67. Thus, as was the case in addressing the motion to dismiss the TAC, "the Court accepts that clearing the pit area carried a great risk of injury." ECF No. 74 at 10 (quoting <u>Laidlow v. Hariton Mach. Co., Inc.</u>, 790 A.2d 884, 896 (N.J. 2002)). The TAC was deficient because "the TAC fail[ed] to explain how IPC's decisions to forego additional training and to continue production while employees cleared the trench area elevated the risk of injury to a virtual certainty." <u>Id.</u> The Court cited to <u>Hocutt</u>, which observed that conduct "repeated in the face of efforts by government regulators or others to put a stop to the practice" or "deception [] used to conceal the repetition" can elevate conduct to meet the

"'substantial certainty' test" that "replaced the 'deliberate intention' standard." 235 A.3d at 1058-59.

The FAC attempts to cure these deficiencies with several examples of warnings and injuries to demonstrate the substantial certainty of future injury by continuing established policy. First, Plaintiff alleges IPC was on notice that clearing the trench area without stopping operations carried a substantial certainty of injury because "in 2013, five years prior to Plaintiff's injuries, 15,000 [IPC] employees were injured as a result of being exposed to machineries that were not completely de-energized prior to performing tasks on those machines, including the Flexo machines, a similar machine on which Plaintiff was injured." ECF No. 78 at ¶36. Further, in 2014, the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") fined IPC for "failure to implement procedures and protocols that would prevent workers from contacting and operating energized machinery parts." Id. at ¶12. OSHA allegedly issued IPC "3 'repeated' violations and 2 'serious' safety violations" in connection with this failure. Id. Plaintiff alleges "OSHA advised [IPC] that workers should never conduct maintenance and troubleshooting without first shutting down all electrical sources to prevent severe injuries to workers." Id. at ¶13. Plaintiff alleges OSHA required IPC to conduct employee training in 2013 for similar issues with cleaning machines powered by electricity. Id. at ¶14. Further, Plaintiff alleges OSHA investigated IPC in 2015 after an employee died in a New York facility while cleaning machines, and found IPC's LOTO procedures "incomplete" and that IPC "failed to complete annual evaluations to ensure the procedures were effective." Id. at ¶15. "In 2015, OSHA placed [IPC] in the 'severe violator enforcement program,' a program for recalcitrant employes who endanger workers by committing willful, repeated or failure to abate violations." Id. at ¶16. Plaintiff alleges a

California regulator investigated IPC in 2017 for similar unsafe practices and stressed the need for effective LOTO when cleaning or maintaining electrically-powered conveyor systems. Id. at ¶18. The California regulator allegedly found the "procedure inadequate to prevent injuries because this did not completely de-energize the machine." Id. at ¶19. Plaintiff alleges IPC did not follow OSHA and California's instructions, and "in 2018, another [IPC] employee's hand was amputated and crushed in a machine that he was cleaning, repairing, and or removing jam debris while the machine was in operation." Id. at ¶22. Plaintiff asserts these prior incidents and engagement with OSHA and state regulators made IPC "fully aware of the danger of exposing employees to machineries that were not completely stopped and de-energized while performing unjamming tasks based on prior injuries and prior violations by OSHA." Id. at ¶31.

Plaintiff additionally alleges IPC was advised in 2017 "that employees should not wear hand protection, such as gloves, where there is a danger of the hand protection becoming entangled in moving machinery or materials." Id. at ¶21. Plaintiff alleges that, nevertheless, he "was again directed [in 2019] to wear gloves while cleaning debris around the roller of the Flexo machine" and "Plaintiff suffered serious injuries when his glove became caught and entangled on the roller on the Flexo machine." Id. at ¶23.

These warnings and injuries allege awareness by IPC that continuing to direct employees to continue production while employees cleared the trench area would cause injuries similar to Plaintiff's with "substantial certainty." Plaintiff alleges that across more than five years preceding his injury, IPC employees have regularly been injured under orders to address machines that should have been de-energized, and OSHA recommended the same after investigating such injuries. Critically, these allegations address IPC's appreciation of the risk before the accident, not after as criticized in the Court's dismissal of the TAC. ECF No.

74 at 12. This appreciation is reinforced by the allegation that IPC engaged in deception when it "misrepresented its practices to OSHA and often falsely claimed that employees did not follow procedures; however, IPC never provided training to employees on any procedures regarding energy source machines which resulted in the injuries of several employees prior to and after the incident alleged in Plaintiff's Complaint." ECF No. 78 at ¶39. Coupled with the allegation that IPC continued to direct its employees to address machines while they were operating, and that Plaintiff's injury was suffered under similar circumstances, the FAC, as now pled, cures this deficiency to withstand dismissal at this stage of the proceeding.

Context: "As for the context prong, [the Court found] the TAC [] deficient because it contain[ed] no facts which would suggest that Plaintiff's injury and the circumstances surrounding it were 'more than a fact of life of industrial employment.'" ECF No. 74 at 12. The Court observed that the "TAC allege[d], essentially, that Plaintiff was injured as a result of IPC's deliberate decision to incur some risk to employees for the purpose of maximizing the facility's productivity," and found that "'such decisions are a type of mistaken judgment that is a fact of life in industrial workplaces,' and therefore, as pled, IPC's alleged conduct [was] not 'plainly beyond anything the Legislature intended the WCA to immunize.'" Id. at 12-13 (quoting Hocutt, 235 A.3d at 1060).

The FAC, as now pled, cures this deficiency with the allegations summarized above that detail years of IPC ignoring escalating warnings from OSHA, misrepresenting compliance with such warnings, and continuing their policies as numerous employees were injured in the way warned of by OSHA and other regulators. Plaintiff alleges IPC "misrepresented its practices to OSHA and often falsely claimed that employees did not follow procedures; however, [IPC] never provided training to employees on any procedures regarding energy

source machines which resulted in the injuries of several employees prior to and after [Plaintiff's injury]." ECF No. 78 at ¶39. Further, IPC allegedly willfully did not implement the previous recommendations of OSHA and CDOSA and in 2018, another [IPC] employee's hand was amputated and crushed in a machine that he was cleaning, repairing, and or removing jam debris while the machine was in operation." ECF No. 78 at ¶22. Plaintiff further alleges IPC "intentionally misrepresented to OSHA during the investigation [of Plaintiff's own injury] that '[Plaintiff] did not lockout the machine properly' . . . [when IPC] knew there was no lockout option on the machine." Id. at ¶48. Additionally, IPC allegedly "intentionally misrepresented to OSHA during the investigation when [IPC] indicated that 'employees required to enter the pit were trained on LOTO procedure and that the machine had an interlock as an extra level of protection'" because IPC "never trained Plaintiff on the LOTO procedure and there was no interlock at the time of Plaintiff's injuries." Id. at ¶¶48-49. Plaintiff's allegations in the FAC, which were not as detailed or fulsome in the TAC, describe a nexus between the employer's previous alleged misconduct and the injury at issue and compels a finding that the "context" prong is sufficiently pled to withstand dismissal at this stage of the proceedings.

IPC contends "Plaintiff's new allegations . . . include unrelated incidents, different types of equipment, different locations and different circumstances from the incident involving Plaintiff." ECF No. 84 at 6. Contrary to Plaintiff's pleading in the FAC that he "suffered serious injuries when his glove became caught and entangled on the roller on the Flexo machine," ECF No. 78 at ¶23, IPC maintains "Plaintiff was not operating or performing maintenance on a Flexo machine at the time of the incident." ECF No. 84 at 6. IPC argues: "Therefore, all allegations regarding 'Flexo' equipment or other types of machinery cannot support Plaintiff's claims . . . ." Id. IPC also asserts "Plaintiff was not engaged in

'troubleshooting' or performing any maintenance or repairs of the conveyor system," Id. at 7, contrary to the FAC's statement that Plaintiff was injured after he was "directed to wear gloves while cleaning the debris around the roller of the Flexo machine." ECF No. 78 at ¶23. IPC argues: "Therefore, any alleged facts that relate to such unrelated incidents do not lend credence to the [substantial certainty argument]." ECF No. 84 at 7.

IPC's arguments, however, are entirely derivative of disagreements with the facts alleged in the complaint, which are appropriately raised in a motion for summary judgment, not a motion to dismiss. Edmonson v. Lincoln Nat. Life Ins. Co., 777 F.Supp.2d 869, 884-85 (E.D. Pa. 2011) (legal issue of whether a person acted as a fiduciary could not be resolved by a motion to dismiss "if the parties dispute the facts that establish the defendant's fiduciary status"). Indeed, the two opinions cited by IPC reflect this distinction between a motion to dismiss, where facts asserted in the complaint are presumed true, and a motion for summary judgment, where facts are only accepted if supported by the evidence produced in discovery. See Id. at 4-5 (citing Torres v. Lucca's Bakery, 487 F.Supp.2d 507, 512 (D.N.J. 2007); Tomeo v. Thomas Whitesell Constr. Co., 823 A.2d 769, 776-78 (N.J. 2003)). Both Torres and Tomeo found their respective plaintiff's claims failed at summary judgment, where the facts did not substantiate the complaint's allegations. Id. Categorically, whether an employer's conduct constitutes "an 'intentional wrong' will be dependent on the facts of each case." Tomeo, 823 A.2d at 773 (citing Mabee v. Borden, Inc., 720 A.2d 342, 348 (N.J. App. Div. 1998)). Accordingly, IPC's concerns that the alleged facts, now included in the FAC, do not reflect the truth cannot sustain a motion to dismiss; only in a motion for summary judgment can IPC present evidence contradicting the veracity of the facts in the complaint.

13

IPC's arguments concerning "alleged 'after-the-fact misrepresentations' to OSHA about the incident," ECF No. 84 at 7, do not change the Court's judgment to allow the FAC to proceed. Although IPC argues: "The FAC contains the same claims of alleged post-accident misrepresentations, which this Court has found to be insufficient," Id., such allegations are only one factor in the analysis. Before finding these allegations "insufficient" in dismissing the TAC, the Court observed that "the TAC does not allege that there were any prior incidents or injuries, employee complaints, or OSHA citations arising out of IPC's decision." ECF No. 74 at 11. The Court cited to Hocutt, 235 A.3d at 1059, which stated "an employer's longstanding practice of violating an OSHA regulation . . . [could] rise to the level of intentional wrong" based on "proof submitted showing that there were prior forklift-related accidents or injuries, prior OSHA violations pertaining to forklift operations, a failure to abate such OSHA violations, or prior complaints from workers about forklift practices." Id. As the Court has detailed above, the FAC supplements the TAC with the allegations summarized above that detail years of IPC allegedly ignoring escalating warnings from OSHA, misrepresenting compliance, and continuing their policies as numerous employees were injured in the way warned of by OSHA and other regulators. Accordingly, the "alleged 'after-the-fact misrepresentations to OSHA about the incident" cited by IPC, ECF No. 84 at 7, are only part of the totality of the allegations that now bear on this issue.

The Court will permit the FAC to proceed because, as now pled, it sufficiently cures the deficiencies the Court identified with the TAC. IPC's challenges to the allegations in the FAC may be meritorious and very well may result in a summary judgment motion, after the facts of this case are developed in discovery. See Van Dunk v. Reckson Assocs. Realty Corp., 45 A.3d 965, 979-80 (N.J. 2012) (dismissing employee's claims at summary judgment because

"the court, as the gatekeeper policing the Act's exclusivity requirement," must consider whether "as a matter of law an employee's injury **and the circumstances in which the injury is inflicted** are 'plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act'") (first emphasis added). But at this stage of the case, the FAC is sufficiently pled to survive dismissal, and the Court cannot order otherwise based on disputes of fact that are better resolved at summary judgment.

**IT IS**, therefore, on this **20th** day of **June 2025**,

**ORDERED** that IPC's motion to dismiss the fourth amended complaint is **DENIED**. IPC shall file an answer to the complaint no later than **July 2, 2025**.

<u>s/ Matthew J. Skahill</u>
MATTHEW J. SKAHILL
United States Magistrate Judge

15